SEALED

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**FILED**
December 02, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____kk_____
DEPUTY

**UNITED STATES OF AMERICA
Plaintiff**

v

**DANIEL VINCENT ATTRIDGE
Defendant**

**INDICTMENT**

[Cts. 1-5: 18 U.S.C. § 1343 – Wire Fraud]

**NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE**

**1:25-CR-537-RP**

**THE GRAND JURY CHARGES:**

**COUNTS ONE THROUGH FIVE**
**Wire Fraud**
**(Violations of 18 U.S.C. §§ 1343 and 2)**

1. Beginning no later than 2018 and continuing at least until in or about September 2023 ("the Relevant Period"), in the Western District of Texas and elsewhere, Defendant,

**DANIEL VINCENT ATTRIDGE,**

acting with intent to defraud, and acting both personally and by and through other persons known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises; and for the purpose of executing that scheme and artifice, transmitted and caused to be transmitted by means of wire, radio and television communication in interstate and foreign commerce, as set forth below, writings, signs, signals, pictures, and sounds.

2. The purpose of the scheme and artifice was to enrich Attridge and persons associated with him by defrauding individuals whom Attridge convinced to lend him money ("Lenders").

## Background

3. During the Relevant Period, Attridge resided in Cedar Park, Travis County, Texas, in the Western District of Texas.

4. During the Relevant Period, Attridge owned and controlled a company called Nilsatis, Inc.

5. During the Relevant Period, Attridge would, from time to time, meet individuals in the Western District of Texas and elsewhere and tell them that he made his living by trading commodities such as petroleum, precious metals, and cryptocurrencies.

6. Attridge sometimes represented to these individuals that, if they lent money to him, he would use the funds to trade commodities. Attridge further represented to these individuals that he could pay interest on the funds at relatively high rates because of the profits he would earn by trading commodities.

## Loan Agreements

7. When these individuals chose to lend money to Attridge in order to receive the interest that Attridge promised to pay, Attridge entered into a Loan Agreement in which he promised to repay the Lender's principal by a certain date and to pay interest at a certain rate.

8. Attridge personally was the borrower in some of the Loan Agreements. In others, Nilsatis, Inc. was the borrower, and Attridge made the agreement on the company's behalf.

9. The following are examples of such Loan Agreements:

   a. *Loan A:* On or about October 5, 2020, Nilsatis, Inc. agreed to repay after 24 months a loan of $150,000 ("Loan A") made to Nilsatis, Inc. by S.S., a person known to the Grand Jury, and also to pay interest at the greater of 3% per month or an interest rate "reflective of trade performance."

  b. *Loan B:* On or about January 7, 2022, Nilsatis, Inc. agreed to repay on February 25, 2022 a loan of $20,000 ("Loan B") made to Nilsatis, Inc. by G.M. and T.M., persons known to the Grand Jury, and also to pay interest of 9.1% for the period from January 7, 2022 to February 25, 2022.

  c. *Loan C:* On or about December 5, 2022, Attridge agreed to repay on June 1, 2023 a loan of $50,000 ("Loan C") made to Attridge by G.M. and T.M., persons known to the Grand Jury, and also to pay interest of at least 25% for the period from December 5, 2022 to June 1, 2023. The Loan Agreement stated that "this is considered a minimum return rate," and "[d]ependent upon performance over the period, the rate may work out to be significantly higher."

  d. *Loan D:* On or about March 9, 2023, Nilsatis, Inc. agreed to repay on May 15, 2023 a loan of $125,000 ("Loan D") made to Nilsatis, Inc. by A.P., a person known to the Grand Jury, and also to pay interest of 21% for the period from March 9, 2023 to May 15, 2023.

  e. *Loan E:* On or about March 22, 2023, Attridge agreed to repay on May 31, 2023 a loan of $10,000 ("Loan E") made to Attridge by B.C., a person known to the Grand Jury, and also to pay interest of 21% for the period from March 22, 2023 to May 31, 2023.

### Wire Transfers of Lender Funds

10. In a number of instances, the Lenders provided their money to Attridge or Nilsatis, Inc. by way of wire transfer.

11.  Attridge knew that the Lenders were going to wire the money, because he provided the account and routing information for the accounts that would receive the wire transfers.

12.  During the relevant period, the Fedwire Funds Service was a means of wire-transferring funds, and every transfer of funds via the Fedwire Funds Service ("Fedwire transfer") was in interstate commerce because it required an exchange of electronic communications between Federal Reserve facilities in New Jersey and Texas.

13.  As described below, a number of wires from Lenders to Attridge and Nilsatis were Fedwire transfers.

**False and Fraudulent Pretenses, Representations, and Promises**

14.  Attridge's representations to the Lenders about using the loan proceeds to trade commodities were false and fraudulent, because, as Attridge knew, he used only a small fraction of the loan proceeds to trade commodities, and he used most of the loan proceeds either to pay personal living expenses or to pay principal and interest to Lenders.

15.  Attridge never disclosed to Lenders the manner in which he expended the loan proceeds.

16.  Attridge's promises to pay interest to Lenders were false and fraudulent, because Attridge knew but failed to disclose that he had spent and would spend most of their money in ways that did not generate profits.

17.  In other words, Attridge knew, but did not disclose to the Lenders, that he was not generating – and had no expectation of generating – profits that would have enabled him to pay interest to the Lenders at the rates he agreed and promised to pay.

18. When Attridge paid Lenders any of the money that he had agreed to pay, he frequently paid it late, and he made excuses about his tardiness that were false and fraudulent.

19. As Attridge knew, the true reason for his inability to pay timely was his expenditure of the loan proceeds in ways that did not generate profits or even preserve the Lenders' principal.

20. By failing to disclose to Lenders that most of the money they received from him was the proceeds of their own loans or other Lenders' loans, Attridge allowed Lenders to believe that any money they received from him was proceeds from Attridge's commodities trading.

21. Through his execution of this scheme and artifice, Attridge inflicted substantial financial losses on Lenders who trusted him with their savings.

## Counts

22. As to each of Counts One through Five, on or about the date set forth below, in the Austin Division of the Western District of Texas and elsewhere, the Defendant, acting with intent to defraud, and acting both personally and by and through others known and unknown to the Grand Jury, having devised and having intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as described in this Indictment, for the purpose of executing that scheme and artifice, transmitted and caused to be transmitted by means of wire and radio communication in interstate commerce, the writings, signals, and sounds set forth below:

| Count | Date | From | To | Contents |
|-------|------|------|-----|----------|
| One | December 3, 2020 | S.S. or K.C. Account | Nilsatis, Inc. Account | Fedwire Transfer of $30,000 for part of Loan A |
| Two | January 11, 2022 | G.M. or T.M. Account | Attridge Account | Fedwire Transfer of $20,000 for Loan B |
| Three | December 7, 2022 | G.M. or T.M. Account | Attridge Account | Fedwire Transfer of $50,000 for Loan C |
| Four | March 13, 2023 | A.P. or P.P. Account | Attridge Account | Fedwire Transfer of $125,000 for Loan D |
| Five | March 29, 2023 | B.C. Account | Attridge Account | Fedwire Transfer of $10,000 for Loan E |

Each in violation of 18 U.S.C. §§ 1343 and 2.

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE
[*See* Fed. R. Crim. P. 32.2]
### I.
### Wire Fraud Violations and Forfeiture Statutes
[Title 18 U.S.C. § 1343, subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C), as made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the criminal violations set forth above, the United States of America gives notice to the Defendant of its intent to seek the forfeiture of certain property upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), as made applicable to criminal forfeiture by Title 28 U.C.S. § 2461(c), which states:

> **Title 18 U.S.C. § 981. Civil Forfeiture**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> * * *
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting a "specified unlawful activity" as defined in section 1956(c)(7).

This Notice of Demand for Forfeiture includes but is not limited to the money judgment in Paragraph II.

## II.
## Money Judgment

A sum of money that represents the amount of proceeds obtained, directly or indirectly, property involved in such offense, or traceable to such property as a result of the violations set forth above for which the Defendant is solely liable.

### Substitute Assets

If any identified forfeitable property, as a result of any act or omission of the Defendant:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third person;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture, pursuant to Title 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2, of any other property (substitute assets) of said Defendant up to the value of the forfeitable property.

A TRUE BILL

FOREPERSON

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

By: _____
FOR: ALAN M. BUIE
ASSISTANT UNITED STATES ATTORNEY